J. TONY SERRA #32639
SHARI L. GREENBERGER #180438
OMAR FIGUEROA #196650
506 Broadway
San Francisco CA 94133
Telephone: 415/986-5591

Attorneys for Defendant
REV. CHARLES EDWARD LEPP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,               CR 04-0317 MHP

     Plaintiff,                    MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
     v.                            MOTION TO MODIFY TERMS OF
                                        PRETRIAL RELEASE TO ALLOW
REV. CHARLES EDWARD LEPP, et al.,       USE OF SACRAMENT PURSUANT TO
                                        THE RELIGIOUS FREEDOM
     Defendants.                   RESTORATION ACT
_____/

## STATEMENT OF FACTS

Rev. Charles Edward Lepp is a sincere and practicing Rastafarian. *See* Declaration of Lepp filed herewith. He is a reverend and the minister of Eddy's Medicinal Gardens and Multi-Denominational Ministry of Cannabis and Rastafari Ministry located in Lake County, California. *Id*. Reverend Eddy Lepp is a minister of the Rastafarian Faith. *Id.* He has been a Rastafarian Christian since 2000.

On or about May 10, 2004, Eddy's Medicinal Gardens and Ministry of Cannabis and Rastafari filed its corporate charter with the State of Nevada. *See* Exhibit A, Corporate Charter.

In November 2000, Rev. Lepp also obtained an honorary

1

1   Doctor of Divinity Degree and Doctor of Metaphysics Degree from
2   the Universal Life Church.  As of October 27, 2000, Rev. Lepp has
3   been ordained all the rights and privileges to perform all duties
4   of the Ministry by the Universal Life Church.  In August 2001,
5   the Universal Life Church also conferred upon Rev. Lepp the
6   Degree of Doctor of Religious Humanities.  *See* Exhibit B,
7   Certificates from Universal Life Church.

8       Further, as a religious sacrament, Rev. Lepp uses ganja or
9   marijuana in the practice of his religion.  The sacramental use
10  of ganja in ceremonies is used to bring Rev. Lepp (and his
11  followers) closer to the divinity and to enhance unity among
12  believers.  Marijuana - known as ganja in the language of the
13  religion - operates as a sacrament with the power to raise the
14  partakers above the mundane and to enhance their spiritual unity.
15  The use of this sacrament is essential, necessary and a central
16  component for the exercise and practice of this faith.

17      Rev. Lepp is currently on pretrial release.  He does not
18  want to violate any terms of his release, yet he desires to
19  freely practice his religion.  Accordingly, Rev. Lepp herein
20  respectfully seeks the Court's permission to modify or clarify
21  his terms of release so that he is allowed to use marijuana as a
22  religious sacrament, which is central to the practice of his
23  religion.

24
25
26
27
28

1    ARGUMENT

2    REV. LEPP SHOULD BE ALLOWED THE SACRAMENTAL USE OF
     MARIJUANA WHILE ON PRETRIAL RELEASE PURSUANT TO THE
3    RELIGIOUS FREEDOM RESTORATION ACT OF 1993 .

4    A.   Introduction

5        The Religious Freedom Restoration Act ("RFRA") was enacted

6    in 1993.   In general, the RFRA allows a person whose religious

7    exercise has been burdened by the government to assert a claim or

8    defense and obtain appropriate relief from the government.   42

9    U.S.C. § 2000bb-1(c) (2005).   The RFRA provides that the govern-

10   ment "shall not substantially burden a person's exercise of

11   religion even if the burden results from a rule of general

12   applicability" unless the government can demonstrate that the

13   burden on the religion "(1) is in furtherance of a compelling

14   government interest; *and* (2) is the least restrictive means of

15   furthering that compelling government interest."   42 U.S.C. §

16   2000bb-1(a)-(b)(2005) (emphasis added).

17       Here, Rev. Lepp contends that his pretrial release condi-

18   tions forbidding him to use marijuana violates his religious

19   freedoms, burdens the essential practice of his religion, and the

20   government is unable to demonstrate a compelling government

21   interest that is the least restrictive, justifying such a burden

22   on his religious freedom.

23       B.   The Ninth Circuit Acknowledges Rastafarianism as an

24   Established and Recognized Religion.

25       In United States v. Bauer, 84 F.3d 1549, 1557 (9th Cir.

26   1996), the Ninth Circuit became the first appellate court to

27   apply the RFRA to a case involving the religious use of

28   marijuana.   The court heralded an important decision in holding

3

1   that a Rastafarian's personal possession and use of marijuana
2   gave rise to a valid, religious-exercise defense under the RFRA.
3   *Id.* at 1559.  The court's discussion of Rastafarianism indicates
4   that the religion is definitely protected by the RFRA.

5        Rastafarianism is a recognized religion which first took
6   root in Jamaica in the nineteenth century.  There are now many
7   adherents in the United States.  <u>United States v. Bauer</u>, 84 F.3d
8   1549, 1556 (9th Cir. 1996) citing Mircea Eliade, Encyclopedia of
9   Religion 96-97 (1989).  Rastafarianism is among the 1,558
10  religious groups sufficiently stable and distinctive to be
11  identified as one of the existing religions in this country.
12  *Id,.* citing J. Gordon Melton, Encyclopedia of American Religions,
13  870-71 (1991).

14       Standard descriptions of the religion emphasize the
15  sacramental use of ganja in ceremonies designed to bring the
16  believer closer to the divinity and to enhance unity among
17  believers.  <u>Bauer</u> at 1556.  Functionally, marijuana - known as
18  ganja in the language of the religion - operates as a sacrament
19  with the power to raise the partakers above the mundane and to
20  enhance their spiritual unity.  *Id*.

21       In <u>Guam v. Guerrero</u>, 290 F.3d 1210, 1212-1213 (9th Cir.
22  2002), the Ninth Circuit, based upon government stipulation,
23  found that Rastafarianism is a legitimate religion and that
24  marijuana use is sacramental in the practice of that religion.
25  *See also*, fn 2 of <u>Guam v. Guerrero</u> at 1213 citing <u>United States</u>
26  <u>v. Bauer</u>, 84 F.3d 1549, 1559 (9th Cir. 1996), "we have previously
27  acknowledged that Rastafarianism is a legitimate religion, in
28  which marijuana plays a necessary and central role."

1    Accordingly, the Ninth Circuit has already determined and

2    acknowledged Rastafarianism as a legitimate and established

3    religion.  Here, Rev. Lepp is a sincere and practicing

4    Rastafarian and the sacramental use of marijuana or ganja is

5    necessary and a central role in the exercise of his religious

6    practices.  Pretrial release conditions forbidding the

7    sacramental use of marijuana unduly burdens Rev. Lepp's freedom

8    to exercise and practice his religion.

9    C.   <u>The Current Pretrial Release Conditions Impose a</u>

10   <u>Substantial Burden on Rev. Lepp's Practice of Rastafarianism</u>

11   <u>within the Meaning of the RFRA</u>.

12   The RFRA forbids the government to "substantially burden a

13   person's exercise of religion, even if the burden results from a

14   rule of general applicability."  42 U.S.C. § 2000bb-1(a).  The

15   defendant carries the burden in establishing a substantial burden

16   on his religious freedom.  The Ninth Circuit has stated that when

17   a defendant meets this requirement, he has established a *prima*

18   *facie* case of an RFRA violation.  *See* <u>Guam v. Guerrero</u>, 290 F.3d

19   at 1222.

20   In a case decided prior to the enactment of RFRA, the

21   United States Supreme Court stated that a substantial burden on

22   the free exercise of religion exists where a government action

23   places "substantial pressure on an adherent to modify his

24   behavior and to violate his beliefs."  <u>Thomas v. Review Board of</u>

25   <u>Indiana Employment Sec. Division</u>, 450 U.S. 707, 718 (1981).  The

26   U.S. Supreme Court has also stated that a statute burdens the

27   free exercise of religion if it "results in the choice to the

28   individual of either abandoning his religious principal or facing

1    criminal prosecution." <u>Braunfeld v. Brown</u>, 366 U.S. 599, 605

2    (1961).  Ninth Circuit courts have relied on language from both

3    of these Supreme Court cases in interpreting the substantial

4    burden requirement of the RFRA.  *See* <u>Guerrero</u>,  290 F.3d at 1222;

5    *see also*, <u>United States v. Valrey</u>, 2000 U.S. Dist. LEXIS 22390 at

6    *6.

7           In <u>Goehring v. Brophy</u>, 94 F.3d 1294, 1299 (9th Cir. 1996),

8    the Ninth Circuit explained its standard for the substantial

9    burden requirement under the RFRA:

10                   To show a free exercise violation, the
                     religious adherent ... has the obligation
11                   to prove that a governmental regulatory
                     mechanism burdens the adherent's practice
12                   of his or her religion by pressuring him or
                     her to commit an act forbidden by the reli-
13                   gion or by preventing him or her from
                     engaging in conduct or having a religious
14                   experience which the faith mandates.  This
                     interference must be more than an inconven-
15                   ience; *the burden must be substantial and
                     an interference with a tenet or belief that
16                   is central to religious doctrine.*

17   (quoting <u>Graham v. Commissioner</u>, 822 F.3d 844, 850-851 (9th Cir.

18   1987) (emphasis added) (citations omitted)).  In <u>Goehring</u>,

19   plaintiffs were state university students who claimed the

20   University's mandatory student registration fee violated their

21   free exercise of religion because the fee was used to subsidize

22   the school health insurance program, which covered abortion

23   services.  <u>Goehring</u>, 94 F.3d at 1297.  The Ninth Circuit held

24   that plaintiffs failed to prove a substantial burden on their

25   exercise of religion because students were not required to

26   purchase the subsidized health insurance, the subsidy from

27   registration fees was not a substantial sum of money, plaintiffs

28   were not required to be associated with abortion services in any

1  manner, and the insurance program did not interfere with their

2  access to public education.  *Id.* at 1300.  The court recognized

3  that the plaintiffs' religious beliefs prohibited them from

4  financially contributing to abortions, but stated "merely because

5  the University has conceded that the plaintiffs' beliefs are

6  sincerely held, it does not logically follow, as the plaintiffs

7  contend, that any governmental action at odds with these beliefs

8  constitutes a substantial burden."  *Id.*

9       In <u>Worldwide Church of God v. Philadelphia Church of God</u>,

10  227 F.3d 1110 (9th the Ninth Circuit relied on its <u>Goehring</u>

11  standard in interpreting the substantial burden requirement under

12  the RFRA.  Plaintiff religious organization which held a copy-

13  right in a book, brought a copyright infringement action against

14  defendant organization that appropriated the book for religious

15  purposes.  Defendant claimed that application of the copyright

16  laws violated RFRA.  *Id.* at 1113.  The Ninth Circuit held that

17  defendant did not meet RFRA's substantial burden test because

18  paying for permission and the right to use a copyrighted work was

19  perhaps an inconvenience but not a substantial burden on the

20  exercise of religion.  *Id.* at 1121.

21       In <u>Goehring</u> and <u>Worldwide Church</u>, the Ninth Circuit

22  stressed the importance of proving a burden that rises above the

23  level of mere inconvenience.  In both decisions, the parties

24  claiming violation of RFRA failed to establish the existence of a

25  burden beyond a (minimal) financial impact.  The decisions imply

26  that the Ninth Circuit requires evidence of a burden on the

27  substantive rights for the RFRA claimant.

28

1    In the case at hand, Rev. Lepp has proven a substantial

2  burden of his free exercise of religion because the current pre-

3  trial conditions prohibit him from performing one of the essen-

4  tial tenets of his religion, a tenet which the Ninth Circuit

5  itself described as necessary and a central role in the practice

6  of Rastafarianism.

7    Similarly, and persuasive here, in United States v.

8  Valrey, 2000 U.S. Dist. LEXIS 22390 *10, a Ninth Circuit District

9  Court used the RFRA to modify the conditions of defendant's

10  supervised release in such a way that he was allowed to continue

11  personal use and possession of marijuana "exclusively in connec-

12  tion with practice of his religion."  In Valrey, defendant was on

13  supervised release from prison when he tested positive for

14  marijuana, an act that the government claimed violated the terms

15  of his release.  Id. *2.

16    The court held that the terms of defendant's supervised

17  release which forbade him to possess and use marijuana amounted

18  to an unjustified substantial burden on his free exercise of

19  religion.  The court relied on the parties' joint stipulation

20  about Rastafarianism in finding the existence of a substantial

21  burden: "Rastafarians emphasize the use of marijuana as a means

22  of bringing the believer closer to the divinity and enhancing

23  unity among the believers."  Id. *5.

24    Accordingly, if a person on supervised release from prison

25  is allowed to possess and use marijuana for religious purposes,

26  Defendant herein should at least be accorded the same rights

27  while on pre-trial release, who has not been convicted of any

28  offense.

1      D.   <u>The Current Pretrial Conditions Serve No Compelling</u>

2 <u>Government Interest in the Least Restrictive Manner Possible</u>.

3      Once a defendant establishes that the government has

4 imposed a substantial burden on his free exercise of religion,

5 the burden of proof then switches to the government to prove that

6 the contested governmental actions satisfy strict scrutiny by

7 establishing the existence of a compelling government interest

8 achieved by the least restrictive means.  42 U.S.C § 2000bb-1(b);

9 *see* <u>Goehring v. Brophy</u>, 94 F.3d 1294, 1300.

10     In order to demonstrate a government action, which

11 substantially burdens the free exercise of religion, satisfies a

12 strict scrutiny analysis, the government must first demonstrate

13 that the action furthers a compelling government interest.  42

14 U.S.C. § 2000bb-1(b)(1).

15     1.  *Recent U.S. Supreme Court Jurisprudence Allowed a*

16 *Religious Group Use of a Schedule I Controlled Substance For*

17 *Sacramental Purposes*.

18     In <u>Ashcroft v. O Centro Espirita Beneficiente Uniao de</u>

19 <u>Vegetal</u>, 125 S.Ct. 686, 160 L.Ed.2d 518 (2004), the U.S. Supreme

20 Court vacated a stay of injunction that enjoined the government

21 from enforcement of the Controlled Substances Act ("CSA") as it

22 pertained to importation, possession, and distribution of hoasca

23 (containing DMT, a controlled substance) for religious cere-

24 monies.  The Court's ruling effectively granted defendant, a

25 small religious organization ("UDV"), the right to import,

26 possess, and distribute hoasca under religious freedom rights and

27 thereby exempted the group from application of the CSA for those

28 purposes.  Although the Court did not issue a written decision,

1    it impliedly affirmed the decisions of the lower courts in its
2    ruling.

3         The above ruling originated from <u>O Centro Espirita</u>
4    <u>Beneficiente Uniao Do Vegetal v. Ashcroft</u>, 389 F.3d 973 (10th
5    Cir. 2004), cert. granted 2005 U.S. Lexis 3326, 4/18/05, wherein
6    the Tenth Circuit en banc affirmed a ruling by a three-judge
7    panel upholding the granting of a preliminary injunction barring
8    the government from interfering in the religious use of hoasca, a
9    substance containing DMT which is a schedule I controlled sub-
10   stance under the CSA.  Hoasca is used as a religious sacrament by
11   the Union of the Vegetable's (UDV), a Brazilian religion.

12        While the U.S. Supreme Court granted certiorari, the law
13   is still of precedential value and import in its holding that the
14   U.S. government cannot bar the sacramental use of a drug even
15   when it is listed under the CSA.  Further, the fact that the U.S.
16   Supreme Court vacated the temporary stay of the injunction, which
17   was sought by plaintiff, John Ashcroft, and that three courts
18   prior, including the Tenth Circuit en banc, all agreed on the
19   meritorious nature of the preliminary injunction, gives credence
20   to the weight and legal grounds of the ruling.

21        Here, Rev. Lepp argues that this Court should rely on
22   <u>O Centro</u>, which held that government cannot bar or prohibit the
23   sacramental use of a drug, even when it is listed as a Schedule I
24   drug under the CSA.

25        In the first of two decisions by the Tenth Circuit, the
26   court's discussion of the RFRA is instructive for the case at

27

28

                                  10

1  hand.  _O Centro_, 342 F.3d 1170 (10th Cir. 2003).[1]  The government

2  argued three compelling interests in its prohibition of hoasca:

3  "protection of the health and safety of [UDV] members; potential

4  for diversion from the church to recreational users; and

5  compliance with the 1971 United Nations Convention on

6  Psychotropic Substances."  _O Centro_, 342 F.3d at 1173.  The Tenth

7  Circuit walked through each of these arguments and individually

8  rejected them; only the first two government arguments are

9  relevant to this case.

10      With regard to the health and safety protection argument,

11  the court found that the government failed to demonstrate danger

12  to UDV members' health from sacramental hoasca use.  _Id_. at 1182.

13  In doing so, the court rejected the government's recitation of

14  criteria for listing a substance on CSA Schedule I and reliance

15  for the general danger of hallucinogens.  _Id_.  The court stated

16  that the government's burden under RFRA was "to demonstrate a ban

17  on hoasca use by the [UDV], not a ban on hallucinogens in

18  general, promotes a compelling interest in health and safety."

19  _Id_.  The court stated that the government may substantially

20  burden a person's exercise of religion "'only if it demonstrates

21  that _application of the burden to the person_ furthers a

22

23  ─────────────────

24      [1]  In its first decision, the Tenth Circuit vacated the
    emergency stay of injunction that it had originally granted,
25  thereby affirming the district court's preliminary injunction
    against the government.  _O Centro_, 342 F.3d at 1187.  The Tenth
26  Circuit then reheard the case _en banc_, again reaffirming the
    district court's grant of preliminary injunction.  _O Centro_, 389
27  F.3d 973 (10th Cir. 2004).  For purposes of this memo, the Tenth
    Circuit's first opinion is more relevant, because the opinion en
28  banc contains only a brief per curiam opinion and lengthy
    concurring and dissenting opinions.

1    compelling interest, not merely application of the law in

2    general.'"   *Id.* (citation omitted).

3         In essence, this requires a case-by-case analysis as to

4    each individual or particular circumstance.  Further, <u>O Centro</u>

5    instructs that the government cannot just rely on Congressional

6    language in the CSA to justify its practices or generalized

7    language that since a substance is listed as a Schedule I

8    substance, it is *de facto* dangerous.  Rather, the government must

9    prove that applying the CSA *to defendant* furthers a compelling

10   government interest.

11        In its holding, the Tenth Circuit also relied on the

12   testimony from a UDV expert, who stated that the "'set and

13   setting'" in which an individual takes a hallucinogen is critical

14   in determining the experience, and that the setting in which UDV

15   members consumed hoasca minimized danger and optimized safety.

16   *Id.* at 1180.  The Tenth Circuit ultimately determined that health

17   and safety was not a compelling government interest for purposes

18   of applying the CSA to UDV members.

19        Similarly here, Rev. Lepp contends that the manner of

20   usage of his religious sacrament is done within the confines of

21   his religious practice and/or medical necessity (as detailed in

22   his Motion to Modify Terms of Pretrial Release based upon Raich

23   and Medical Necessity).  Rev. Lepp's usage itself in the medical

24   context negates any argument of the substance being a danger,

25   because, instead, the substance alleviates and aids his medical

26   sufferings (not a danger or harmful).

27        Further, many recent studies have been published detailing

28   the medical efficacies of marijuana, which has lead to the recent

12

1  movement of the legalization of medical cannabis in states across

2  this country, including not only California, but also Alaska,

3  Arizona, Colorado, Hawaii, Maine, Nevada, Oregon and Washington.

4  *See* Raich v. Ashcroft, 352 F.3d 1222, 1229 (9th Cir. 2003) *cert.*

5  *granted*, 159 L.Ed.2d 811, 124 S.Ct. 2909 (2004).  Therefore, any

6  argument proffered by the government beyond the rhetoric of

7  Schedule I classification, is meritless, because marijuana use

8  per se is not dangerous or harmful.  Additionally, the manner of

9  usage in accordance with religious principles further minimizes

10 any danger and optimizes safety.

11      The government's second argument for a compelling

12 government interest was "risk of diversion to non-religious use,"

13 which the court again rejected.  *Id*. at 1182.  The government

14 brought in experts who testified to increased interest in hallu-

15 cinogens in this country and a belief in substantial risk of

16 abuse of hoasca.  *Id*.  The court referred to preliminary hoasca

17 studies as "speculation" and "generalized comparisons with other

18 abused drugs."  *Id*.  The court characterized UDV's expert's

19 testimony as "powerful contradictory testimony."  *Id*.

20      Here, it is incumbent upon the government to produce

21 evidence of any risk of diversion to non-religious use if granted

22 herein.  Rev. Lepp contends that the government will be unable to

23 establish any such evidence because his sacramental use is

24 limited to his religious practices in his church and church

25 gatherings.  The manner of usage itself is confined and limited,

26 and thereby any risk of diversion to non-religious use is

27 negated.

28

1       Lastly, the Tenth Circuit summarily rejected the

2   government's additional arguments for compelling government

3   interest: uniform application of the CSA, need to avoid constant

4   supervision of UDV, and the potential of opening the door to

5   myriad claims for religious exceptions.  *Id*. at 1185.  Here, this

6   Court should also summarily dismiss any similarly proffered

7   arguments as uncompelling.

8       Further, in United States v. Valrey, *supra*, wherein a

9   Ninth Circuit District Court permitted the use of marijuana to a

10  Rastafarian, the government argued that because of the

11  correlation between drug use and criminal behavior, the court was

12  required, according to the relevant statute, to prohibit drug use

13  during supervised release.  2000 U.S. Dist. LEXIS 22390 *7.  The

14  government argued that the ultimate goal of rehabilitating the

15  defendant justified the burden on his religious freedom.  Id.

16  However, the court rejected both arguments, stating that the

17  government offered no proof that defendant was in danger of

18  recidivism as a result of his marijuana use.  The court suggested

19  that "the devout practice of his religion in conjunction with the

20  other terms of supervised release *may help ensure Mr. Valrey's*

21  *rehabilitation*."  *Id*. (citation omitted) (emphasis added).

22      Similarly here, the court can impose other terms of

23  supervised release to ensure that the defendant is not a flight

24  risk or danger to the community.

25      Therefore, in accordance with established law, Rev. Lepp's

26  use of his religious sacrament while on pre-trial release should

27  be granted since the government is unable to proffer any

28

                                14

1 compelling interest justifying such a substantial burden placed
2 on his religious freedom.

3          2.  *The Government Must Prove That the Burden on*
4 *Defendant's Exercise of Religion is the Least Restrictive Means*
5 *of Furthering the Compelling Governmental Interest*.

6          If the government is able to prove the existence of a
7 compelling interest, it must next prove that application of the
8 burden to the person "is the least restrictive means of
9 furthering that compelling government interest."  42 U.S.C. §
10 2000bb-1(b)(2).  <u>United States v. Valrey</u>, *supra*, again provides
11 good persuasive authority for a religious freedom analysis under
12 RFRA.  In <u>Valrey</u>, defendant argued five factors that would
13 accomplish a less restrictive means of furthering the govern-
14 ment's interests.  <u>Valrey</u>, 2000 U.S. Dist. LEXIS 22390.  The five
15 factors argued were: "(1) continued self-reporting of marijuana
16 use, (2) regular urine-testing for other controlled substances,
17 (3) monthly reporting, (4) periodic criminal history checks, and
18 (5) compliance with all of the other incidents of supervision."
19 *Id*. *8-9.  The government failed to address this second prong of
20 the test, so the court accepted these alternative means as
21 adequate in ensuring that defendant was not using any other
22 controlled substances and was achieving the goals of the
23 supervised release.  *Id*. *9.

24          In <u>United States v. Bauer</u>, *supra*, the Ninth Circuit did
25 not directly address the issue of whether the government utilized
26 the least restrictive means of achieving a compelling interest,
27 but it did include some language in dicta relevant herein.  In
28 remanding the case, the Ninth Circuit stated that the district

15

1    court could not treat the existence of marijuana laws as "dispos-

2    itive of the question whether the government had chosen the least

3    restrictive means of preventing the sale and distribution of

4    marijuana." Bauer, 84 F.3d at 1559.

5         Accordingly, the government cannot summarily argue that

6    drug enforcement laws are the least restrictive means of

7    achieving the government goal.  Thus, the government will have to

8    provide evidence proving that contested drug enforcement laws are

9    the least restrictive means of achieving its goals.

10        Here, as evidenced in Valrey, there are other less

11   restrictive means of furthering a compelling government interest

12   (if one can be shown).  Again, unless the government succeeds in

13   proving their strict burden, there is no justification for

14   substantially burdening Rev. Lepp's freedom to practice and

15   exercise a central essential tenet of his religion.

16                              CONCLUSION

17        Based upon the foregoing, Rev. Lepp respectfully requests

18   that his motion be granted herein, and that he be allowed to use

19   marijuana, which is a sacrament in his religion, while on

20   pretrial release.

21        Dated: May 16, 2005

22                                   /s/ J. TONY SERRA
                                     J. TONY SERRA
23                                   SHARI L. GREENBERGER
                                     Attorneys for Defendant
24                                   REV. CHARLES EDWARD LEPP

25

26

27

28