1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

CHARLES EDWARD LEPP,

        Defendant.

                      /

No. CR 04-00317 WHA
No. C    12-05836 WHA

**ORDER DENYING
SECTION 2255 MOTION**

**INTRODUCTION**

      Defendant has moved to vacate, set aside, or correct his conviction, judgment, and

sentence under Section 2255 and has requested an evidentiary hearing. The motion is **DENIED**.

There is no need for an evidentiary hearing.

**STATEMENT**

      Defendant Charles Edward Lepp, proceeding pro se, has filed a motion to vacate, set

aside, or correct his sentence for one count of conspiracy to possess with intent to distribute and

distribution of marijuana in violation of 21 U.S.C. 846 and one count of manufacturing and

possession with intent to distribute and distribution of marijuana in violation of 21 U.S.C.

841(a)(1). Judge Marilyn Hall Patel presided over defendant's criminal proceedings, including

pre-trial motions, trial, and sentencing. The undersigned judge received this matter by way of

reassignment.

      On March 2, 2005, defendant Lepp was indicted and charged with conspiracy to possess

with intent to distribute 1,000 plants or more of marijuana in violation of 21 U.S.C. 846 (count

United States District Court

For the Northern District of California

1   one), manufacturing and possessing with intent to distribute marijuana in violation of 21 U.S.C.

2   841(a)(1) (counts two through four), and maintaining a premises for manufacturing a controlled

3   substance in violation of 21 U.S.C. 856(a)(1) (counts five and six).  As a result of a number of

4   pretrial rulings, defendant was tried on only two counts:  (1) conspiracy to possess with intent to

5   distribute marijuana and (2) manufacture and possession of marijuana with intent to distribute.

6   Following a jury trial, the jury returned a guilty verdict on both counts, further finding that both

7   counts involved 1,000 or more marijuana plants.  Pursuant to the statutory mandatory minimum,

8   defendant was sentenced to a ten-year term of imprisonment and five years of supervised release.

9   Defendant is currently in custody, with a projected release date of January 13, 2018 (Opp. 1).

10        During pretrial proceedings, defendant was represented by a number of different

11   attorneys.  After replacing defendant's previously retained counsel on March 22, 2005, Attorney

12   J. Tony Serra represented defendant pro bono.  Attorneys Omar Figueroa and Shari Greenberger

13   assisted at Attorney Serra's direction, also on a pro bono basis.  Due to Attorney Serra's

14   impending incarceration in 2006, Attorney Serra was excused.  In January 2006, Attorneys

15   Figueroa and Greenberger moved to withdraw as counsel on the ground that Attorney Serra was

16   defendant's counsel of choice and defendant did not wish to proceed with Attorneys Figueroa

17   and Greenberger (Dkt. No. 106).  Federal Public Defender Shawn Halbert was then substituted

18   as counsel.  Prior to trial, Attorney Michael Hinckley replaced Attorney Halbert as CJA counsel

19   in February 2007.  Attorney Hinckley then represented defendant through the remaining pre-trial

20   proceedings, trial, and sentencing.

21        **1.     PRE-TRIAL MOTIONS.**

22             **A.     Motions Based on the Religious Freedom Restoration Act.**

23        Before trial, defendant filed a number of motions based on the Religious Freedom

24   Restoration Act ("RFRA"), contending that he was a practicing Rastafarian and that marijuana

25   use was a necessary component of his religious practices.  For example, in May 2005, Attorney

26   Serra filed a motion to modify defendant's bail conditions to permit the use of marijuana while

27   on pretrial release.  In September 2005, Attorneys Serra, Figueroa, and Greenberger filed a

28   motion to quash the 2004 and 2005 search warrants and suppress all evidence seized pursuant to

1   those warrants.  Attorney Halbert subsequently moved to suppress the evidence on the additional

2   ground that the search warrants violated RFRA, contending that the magistrate judge should

3   have been informed of the religious nature of his marijuana possession.  Judge Patel rejected

4   defendant's argument that the warrants should be suppressed on the basis that they violated

5   RFRA (Dkt. No. 193).  Attorney Hinckley then filed a motion for reconsideration of the order

6   denying the motion to suppress, which was denied (Dkt. Nos. 199 and 207).  Judge Patel

7   quashed the 2004 search warrant but granted the government's motion to admit evidence found

8   in plain view during the 2004 search.  Judge Patel also quashed the 2005 search warrant and

9   suppressed the fruits of the search executed pursuant to that warrant (Dkt. No. 207).

10          At a hearing on May 30, 2007, Attorney Hinckley raised the issue of presenting a RFRA

11   defense.  Judge Patel expressed skepticism, stating that "the amount of marijuana that was seized

12   in this case was not consistent" with religious or sacramental use (Dkt. No. 302 at 7).  Attorney

13   Hinckley then filed a written motion to present a RFRA defense at trial.  In an eighteen-page

14   reasoned opinion, Judge Patel denied the motion (Dkt. No. 235).  The order expressed concern

15   that the high number of individuals defendant claimed were members of his church was an

16   opportunistic fabrication.  Attorney Hinckley then filed a motion for reconsideration attaching

17   declarations from defendant and Erica Womachka stating that there were 2500 church members,

18   each of whom grew marijuana for his or her own use on individual plots (Dkt. No. 236).  The

19   motion for reconsideration was denied.

20                      **B.      Motion Regarding Outrageous Government Conduct.**

21          Attorney Hinckley moved to dismiss the indictment based on outrageous government

22   conduct related to a marijuana transaction the government set up after defendant was indicted

23   and represented by counsel (Dkt. No. 198).  The motion was based on a transaction dated

24   January 19, 2005, in which a confidential government informant arranged to purchase one pound

25   of marijuana from defendant.  Judge Patel denied the motion to dismiss the indictment, but found

26   that the undercover officer and informant who participated in the transaction had an "agency

27   relationship" with the government such that defendant could be induced to make incriminating

28   statements without the assistance of counsel (Dkt. No. 207 at 22).  Judge Patel held that this

constituted a violation of the right to counsel discussed in *Massiah v. United States*, 377 U.S.

201, 207 (1964).  While the *Massiah* violation precluded the government from introducing

evidence of the January 2005 sale charged in the original indictment, Judge Patel held the

evidence was admissible as related to the "newly added distribution charge in the superseding

2005 indictment."  Therefore, the counts arising from the undercover operation were severed

(Dkt. No. 207 at 22–23).

### 2.     EVIDENCE PRESENTED AT TRIAL.

The trial proceeded on counts one and two of the superseding indictment, namely

conspiracy to possess with intent to distribute and manufacture and possession with intent to

distribute based on the approximately 25,000 marijuana plants found on defendant's property

during the search conducted on August 18, 2004.

During jury voir dire, Judge Patel instructed the panel that medical marijuana and

religious marijuana were not defenses to the charges in the case.  Specifically, the judge stated:

> [Y]ou should understand that we're in federal court, and that
> the whole notion of medical marijuana, which is accepted
> under state law, or religious marijuana, are not at issue in this
> case.  They're not defenses in this case.

(Dkt. No. 244 at 61–62).

### A.     The Government's Case.

The parties stipulated that there were 24,784 marijuana plants seized by federal DEA

agents from defendant's land on August 18, 2004.

The government presented the testimony of Dave Garzoli, a detective with the Lake

County Sherriff's Office.  Officer Garzoli testified that he had received reports about a large

marijuana growing operation.  He then drove on California State Highway 20 in Upper Lake and

saw a large field filled with marijuana.  Later, on August 9, 2004, he drove onto the site with

several other law enforcement officers, where they were confronted by several individuals.  The

officers, who were in plainclothes, identified themselves as law enforcement and drew their

firearms.  Several minutes later, defendant drove up and "took command of the situation," asking

the officers what they were doing there (Dkt. No. 245 at 229).  Defendant opined that there were

1   approximately 18,000 marijuana plants for 2400 "patients."  Other state law enforcement officers

2   who accompanied Officer Garzoli at the August 9 visit testified similarly.

**B.    Defendant's Case.**

4       Defendant called Smiley James Harris, Right Reverend for the Church of Greater Faith

5   and Redemption.  Mr. Harris testified that he had an agreement with defendant allowing Mr.

6   Harris' church to grow 250 marijuana plants on defendant's land.  According to Mr. Harris,

7   defendant only provided the land and did not direct or participate in the planting, growing, or

8   harvesting of those plants (Dkt. No. 246 at 319–20).

9       Defendant testified, stating that he was a minister for his church, "Eddy's Medicinal

10  Gardens and Multidenominational Ministry of Cannabis and Rastafari."  He testified that the use

11  of marijuana is a key part of the Rastafarian faith.  By August 2004, defendant and his wife

12  decided to allow medicinal marijuana patients and members of their church to grow marijuana

13  on their land.  An individual could only participate if he or she had a valid California medical

14  marijuana identification card (*id*. at 350–51).

15      Defendant said he had no role in the cultivation other than in allowing others to use his

16  land (*id*. at 351).  He denied ownership of the marijuana, stating that he did not plant, tend, or

17  harvest the plants (*id*. at 356).  He claimed, however, that as leader and founder of the church, he

18  felt "responsible for all of the plants" (*id*. at 357).  Defendant claimed to be a worldwide activist

19  for the legalization of cannabis hemp.  Defendant testified that he had a number of physical

20  disabilities and ailments (*id*. at 356–57, 366–67).

21      After defendant's direct examination and outside the jury's presence, the government

22  requested leave to question defendant regarding two speeches he had previously made.  The

23  government also sought to cross-examine defendant on the 2005 transaction involving the

24  confidential informant, previously excluded as a *Massiah* violation.  Over the objections of

25  defense counsel, Judge Patel held that defendant had opened the door to such evidence because

26  such a sale was "inconsistent with . . . the overall tenor of his testimony" (*id*. at 372).

27      On cross-examination, defendant was asked about prior statements he had made

28  regarding the marijuana plants on his property.  Defendant testified that he was responsible for

United States District Court

For the Northern District of California

5

United States District Court

For the Northern District of California

1    the plants, but that he was not physically involved in the planting or cultivation of the plants (*id*.

2    at 377).  Defendant said that he was "very proud" of the marijuana (*id*. at 357, 377–78).  When

3    questioned about the 2005 transaction involving the sale of one pound of marijuana to a

4    confidential informant, defendant stated that he repeatedly told the confidential informant that he

5    did not have any marijuana and denied being involved in any sale (*id.* at 386–88).

6    Defendant further testified that his wife, Linda, was in charge of the field, whereas

7    defendant just "stayed in the offices" (*id*. at 394).

8                    **C.    The Government's Rebuttal Case.**

9    The government called DEA Special Agent Padgett, who had participated in the search

10   and seizure of marijuana plants from defendant's land on August 18, 2004.  Defendant had told

11   the agent that the fields and plants were all his.  Defendant had said that his wife did not live

12   there and had "nothing to do with this" (*id*. at 420).  Defendant had explained that plots of six to

13   25 plants were each owned by patients in exchange for a $500 donation to his church (*id.* at 421).

14   The informant involved in the January 2005 transaction was called to testify.  He had

15   previously worked as an informant with the DEA and state law enforcement.  He testified that he

16   targeted defendant because he did not like him.  After seeing an advertisement defendant placed

17   requesting information from an August 2004 seizure of defendant's property, the informant came

18   up with a plan to offer defendant pictures from the seizure.  The informant contacted the Lake

19   County Sheriff's Office, which supplied him with pictures from the seizure and connected him

20   with the DEA.  The informant testified that, after several phone calls and meetings, the informant

21   told defendant that his contact was interested in a marijuana transaction.  At defendant's house,

22   defendant showed the informant two large bags of marijuana and directed a young man at the

23   house to make the delivery to the contact, who was an undercover officer (*id.* at 475–76).  The

24   informant rode back with the young man and watched him hand the undercover officer the

25   marijuana and receive cash in exchange.

26   The undercover officer for the January 2005 transaction, Sonoma County Narcotics

27   Detective Andrew Cash, testified.  Detective Cash arranged the deal with defendant to buy one

28   pound of marijuana for $2500 (*id*. at 509–10; 515).  Defendant told the detective that "he himself

1    did not have any marijuana" because law enforcement had taken all of it, but was "acting as a

2    middleman" for the deal (*id*. at 524).

3         **3.    JURY VERDICT AND SENTENCING.**

4         On September 2, 2008, the jury returned a guilty verdict on both counts, finding that both

5    counts involved 1,000 or more plants of marijuana.  Defendant was sentenced on May 18, 2009.

6    Defense counsel contended that a two-level downward departure under the safety-valve

7    provision of U.S.S.G. Section 5C1.2 should apply, and that a further 18-level departure under 18

8    U.S.C. Section 3553(a) was warranted (Dkt. Nos. 274 and 276).  Judge Patel determined that

9    defendant did not qualify for safety-valve relief (Dkt. No. 297 at 18–20).  She stated that safety-

10   valve relief was not appropriate, given defendant's lack of candor with the court throughout the

11   lengthy litigation and defendant's admission that he was growing such a large quantity of plants

12   "proudly as the leader of this church" (*ibid.*).  Defendant was sentenced to the statutory

13   mandatory minimum term of ten years in prison and five years of supervised release.

14        **4.    POST-CONVICTION PROCEEDINGS.**

15        Defendant appealed his conviction and sentence to our court of appeals.  On July 27,

16   2011, our court of appeals affirmed defendant's conviction and sentence in an unpublished

17   decision, *United States v. Lepp*, 446 Fed. App'x. 44 (9th Cir. 2011).  On November 28, 2011,

18   defendant's petition for a writ of certiorari was denied.  Defendant then filed the instant Section

19   2255 motion.

20        Defendant argues that his sentence should be vacated, set aside, or corrected because

21   defendant's counsel provided ineffective assistance.  Specifically, defendant asserts that

22   Attorney Hinckley was constitutionally ineffective on the grounds that he (1) failed to

23   investigate and effectively argue a defense under the RFRA, (2) failed to investigate alleged

24   outrageous government misconduct and successfully bring a motion to dismiss the indictment,

25   (3) failed to investigate and present evidence regarding defendant's physical disabilities, (4)

26   failed to investigate and present evidence regarding the cultivation and ownership of the

27   marijuana by the 2500 members of defendant's church, (5) failed to ensure that the government

28   deposed defendant's wife, (6) failed to effectively object to the admission of prejudicial

testimony, and (7) failed to present evidence regarding eligibility for safety-valve relief.

Defendant also claims that his prior team of pro bono counsel, Attorneys Serra, Figueroa, and Greenberger, provided incorrect and deficient advice in connection with defendant's decision to reject a plea offer. Defendant further claims that the cumulative effects of counsel's ineffective assistance prejudiced him. Defendant also claims that the convictions violate the prohibition against double jeopardy. Finally, while the Section 2255 motion was pending, defendant filed a motion seeking leave to amend the motion to include an additional claim that the Controlled Substances Act violates his right to equal protection under the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954); *see also Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").

The order concludes that as to the claims for ineffective assistance of counsel, defendant does not make a showing that either Attorney Hinckley or Attorneys Serra, Figueroa, and Greenberger's representation rose to the level of being constitutionally deficient, in violation of the Sixth Amendment. Nor is defendant entitled to relief on either his double jeopardy claim or the equal protection claim. Thus, for the reasons stated below, defendant's motion is **DENIED**.

**ANALYSIS**

Section 2255 provides that:

> A prisoner in custody under sentence of court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The district court has the discretion to deny an evidentiary hearing on a Section 2255 motion where the record conclusively shows that the defendant is not entitled to relief. The defendant "need not detail his evidence, but must only make specific factual allegations which, if true, would entitle him to relief." *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998). Our court of appeals has stated, however, that "conclusory allegations which are not supported

United States District Court

For the Northern District of California

by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Here, there is no need for an evidentiary hearing as there are no disputed factual issues to be resolved bearing on the claims made in the instant motion.

The majority of defendant's arguments in his Section 2255 motion are based on ineffective assistance of counsel claims. To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient under the standards of reasonable lawyering, *i.e.*, it "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

As to the first prong, there is a "strong presumption that counsel's performance f[ell] within the wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Performance will fall outside the range of acceptable professional assistance if it falls below "an objective standard of reasonableness," as determined by the prevailing professional norms. *Strickland*, 466 U.S. at 687–88. To prove prejudice under the second prong, a "reasonable probability" is considered to be a probability sufficient to undermine confidence in the outcome. *Id*. at 694. Where possible, the Supreme Court has recommended analysis of ineffective assistance of counsel claims based on the second prong, stating "[t]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*. at 697.

**1.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING PLEA OFFER OR NEGOTIATION.**

Defendant contends that his counsel notified him of a verbal plea offer, by which the government would agree to a sentence of eighteen months in prison, six months in a halfway house, and six months in home confinement (Mot. at 20). Defendant's counsel, however, allegedly informed him that (1) a defense based on the Religious Freedom and Restoration Act "was possible . . . and would probably succeed," (2) the government's case was "weak," (3) evidence from previous searches of defendant's property could not be raised in his trial, and (4) defendant "would probably" be sentenced to only thirty months if he was found guilty at trial

United States District Court

For the Northern District of California

1   because he was eligible for safety-valve relief.  Defendant claims that had his original counsel

2   provided "competent advice concerning his defense and potential sentence," he would have

3   accepted the plea (*ibid.*).  In his reply brief, defendant states that his "original counsel," not trial

4   counsel, failed to properly advise him on whether to accept the government's plea offer.

5          Because defendant's briefs were unclear on this Section 2255 motion, defendant was

6   requested by the Court to submit a sworn affidavit clarifying the factual basis for his claim.

7   Defendant has now submitted a declaration sworn under penalty of perjury in response.  The

8   facts set forth in defendant's declaration regarding his rejection of the plea offer are as follows.

9   Judge Patel referred the parties to another judge for mediation (a review of the records in this

10  action indicates that a settlement conference did in fact take place before Magistrate Judge James

11  Larson on November 9, 2005 (Dkt. No. 92)).  Attorneys Figeroa and Greenberger, then-counsel

12  for defendant, informed him of the deal offered by the government, as described above.

13  Defendant states that he "left the meeting and hearing telling them no, because [he] did not want

14  to leave [his] wife's side in her last days," as she was suffering from cancer (Lepp Decl. ¶ 4).

15  Attorneys Figueroa and Greenberger, as well as an attorney named "James," discussed the plea

16  offer with defendant "over the next week or so."  According to defendant, the attorneys told him

17  "that it was the best deal [he] would get and encouraged [defendant] to take it" (*ibid.*).

18  Defendant did not want to take the plea offer because his former counsel, Attorney Serra, had

19  said he was sure they could win at trial.  At the time he was considering the plea offer, defendant

20  was aware that Attorney Serra would not be available to try the case, as Attorney Serra was due

21  to be incarcerated for eighteen months on his own federal conviction.  Attorneys Figueroa and

22  Greenberger advised defendant that the judge would not grant an eighteen-month continuance to

23  allow Attorney Serra to try the case, and further advised defendant that they were not confident

24  they could win at trial (*ibid.*).  Defendant nevertheless chose to reject the plea offer.

25         "[T]he decision to reject a plea bargain offer and plead not guilty is also a vitally

26  important decision and a critical stage at which the right to effective assistance of counsel

27  attaches."  *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002) (quoting *United States v.*

28  *Zelinsky*, 689 F.2d 435, 438 (1982)).  As to the performance prong, our court of appeals has

stated that for a defendant to establish a claim of ineffectiveness of counsel in a plea situation, he "must demonstrate gross error on the part of counsel . . . ." *Turner*, 281 F.3d at 880 (quoting *McMann v. Richardson*, 397 U.S. 759, 772 (1970)).  The question is "not whether 'counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases.'" *Ibid.* (quoting *McMann*, 397 U.S. at 771).  As to the prejudice prong, a defendant "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, — U.S. —, 132 S.Ct. 1399, 1409 (2012).  The defendant must further demonstrate a reasonable probability that the plea would have been entered, including that the trial court would have accepted the plea agreement. *Ibid.*  Based on the facts stated in defendant's own sworn statement, defendant is not entitled to relief on his claim that counsel provided ineffective assistance in connection with his decision to reject a plea agreement.  As discussed below, defendant's claim does not meet either prong of the *Strickland* test for ineffective assistance of counsel.

*First*, defendant's declaration establishes that his counsel at the time, Attorneys Figueroa and Greenberger, affirmatively advised defendant to take the plea offer.  Even if his prior counsel, Attorney Serra, had expressed confidence regarding his ability to secure an acquittal for defendant at trial, defendant was aware that Attorney Serra would not be available to try his case. "Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Turner*, 281 F.3d at 881.  Attorneys Figueroa and Greenberger informed defendant of the plea offer and its terms, advised him that they were not confident defendant would prevail at trial, and urged him to take the plea, advising him that it was the best deal he was likely to get (Lepp Decl. ¶ 4). Defendant does *not* allege that he was unaware of the potential penalties that he could face if he lost at trial; in fact, a review of the record demonstrates that defendant was informed of the potential penalties at an arraignment hearing before Magistrate Judge Joseph Spero on March 3, 2005, including the ten-year mandatory minimum and maximum penalties (Dkt. No. 305). Defendant cannot, therefore, establish that he received ineffective assistance of counsel in

United States District Court

For the Northern District of California

1   connection with his plea agreement.  Moreover, although he contends that Attorney Serra

2   provided ineffective assistance by expressing a positive assessment of defendant's case at some

3   point prior to the plea negotiation, defendant never claims that Attorney Serra advised him to

4   reject the plea offer.

5       *Second*, defendant's sworn statement establishes that he would not have taken the plea

6   offer at the time it was extended.  Defendant states that his wife was suffering from stage four

7   cancer and that he did not want to leave her (Lepp Decl. ¶ 4).  Because he did not want to be

8   imprisoned while his wife was terminally ill, he rejected the government's plea offer, which

9   would have required at least 24 months away from home.  Defendant's conclusory statement in

10  his Section 2255 motion that, but for counsel's inadequate assistance, he would have accepted

11  the plea offer at the time it was extended is directly contradicted by the specific sworn facts now

12  in the record.

13      In his reply brief, defendant also claims that trial counsel — presumably Attorney

14  Hinckley — was ineffective for "failing to pursue any favorable plea agreement" with the

15  government and for failing to properly advise him regarding the possible outcome of the case

16  were defendant to proceed to trial.  Defendant cites no authority establishing that a defendant has

17  a right to a plea agreement, or that counsel's failure to *seek* a plea agreement constitutes

18  defective assistance.  On the facts of this case, Attorney Hinckley's decision to focus on pre-trial

19  motions and trial preparation, rather than seeking to re-open plea negotiations with the

20  government, is well within the bounds of reasonable professional assistance.  Defendant rejected

21  the prior plea offer, despite the fact that his counsel at the time urged him to accept the deal.

22  Given this rejection, Attorney Hinckley may have reasonably assumed that the government

23  would not likely extend the same deal or a better offer, or that defendant would not have

24  accepted any such offer.  Accordingly, defendant's claim of ineffective assistance of counsel in

25  connection with plea negotiations is **DENIED**.

26      **2.**    **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING RFRA DEFENSE.**

27      Defendant claims that Attorney Hinckley was ineffective due to his failure to present a

28  defense under RFRA.  Defendant contends that Judge Patel denied defendant's motion in limine

12

United States District Court

For the Northern District of California

1   requesting leave to put on a RFRA defense for reasons that were not advanced by either party.

2   In a detailed opinion holding that a RFRA defense would not be allowed, Judge Patel first

3   assumed for the purposes of the order that defendant had established a prima facie case that his

4   religious practice was sincere, that manufacturing and possessing marijuana were tenets of the

5   Rastafarian religion, and that the CSA substantially burdened defendant's ability to practice his

6   religion (Dkt. No. 235 at 5–9).  The burden then shifted to the government to demonstrate that it

7   had a compelling interest in enforcing the CSA and that the least restrictive means had been used

8   to effectuate that interest (*id*. at 9).  Applying this burden-shifting analysis, Judge Patel found

9   that the concern for potential diversion of the marijuana to non-practitioners and non-medical

10  marijuana users constituted a compelling government interest in regulating defendant — in this

11  case, relevant factors included that the marijuana was grown in large fields in plain view without

12  barriers to access, the large quantity of marijuana seized, and defendant's own sale of marijuana

13  in January 2005 to an undercover officer.

14          Defendant claims that Attorney Hinckley was unprepared regarding the applicable law

15  and that counsel "failed to adequately know the available material and issues," failed to

16  understand "how critical it was to establish that the prosecution was substantially burdening his

17  free exercise of religion," and "failed to make meaningful objections" to Judge Patel's order

18  denying the motion in limine.  Defendant further faults counsel for only "perfunctorily" raising

19  the Supreme Court's decision regarding the Controlled Substances Act in *Gonzales v. O Centro*

20  *Espirita*, 546 U.S. 416 (2006).  Moreover, defendant contends that counsel did not preserve the

21  issue for appeal and failed to seek a writ of mandamus.  Defendant's arguments do not establish

22  that counsel's performance was ineffective under *Strickland*.

23          Attorney Hinckley presented legal arguments and facts in support of a RFRA defense, as

24  evident from the briefs he filed in support of the motion in limine.  Counsel set forth the law in

25  support of such a defense, including arguing that once an individual establishes a prima facie

26  case, the burden shifts to the government to demonstrate a compelling interest.  As discussed

27  above, Judge Patel applied this burden-shifting analysis in the order denying the motion.

28  Defense counsel's briefs in support of the motion in limine discussed *Gonzales* and argued that

the decision stands for the proposition that the government must demonstrate, on a case-by-case basis, that the prosecution of a particular defendant is the least restrictive means of serving a compelling governmental interest (*see* Dkt. No. 216 at 11).  Moreover, following the order denying the motion, Attorney Hinckley filed a motion for reconsideration attaching declarations from defendant and Erica Womachka in support of defendant's claim that there were 2500 individual church members, each of whom was responsible for his or her own plot and the plants grown thereon (Dkt. No. 236).  Defendant has set forth no specific facts or arguments that defense counsel should have but failed to raise; instead he merely quarrels with the outcome. *See, e.g., Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011).  That Judge Patel decided against defendant does not, by itself, establish that counsel's performance was deficient.

Contrary to defendant's assertion, the issue was preserved for and raised on appeal.  Our court of appeals upheld the district court's order, stating that "[a]pplying the criminal laws prohibiting possession and manufacture of marijuana to Lepp is the least restrictive means of furthering the government's compelling interest in preventing diversion of sacramental marijuana to nonreligious users." *Lepp*, 446 Fed. Appx. at 46.

Defendant also contends that Attorney Hinckley's performance was deficient in failing to seek a writ of mandamus regarding the Judge Patel's order denying the RFRA motion in limine.  On appeal, our court of appeals affirmed Judge Patel's determination.  Defendant then sought a writ of certiori from the United States Supreme Court, which denied the request.  Defendant cannot, therefore, demonstrate a reasonable probability that the outcome would have been different had Attorney Hinckley sought a writ of mandamus.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING OUTRAGEOUS GOVERNMENT CONDUCT.

Defendant argues that defense counsel was ineffective for failing to investigate and research a motion to dismiss the indictment based on the government's "outrageous scheme to entice [defendant] into selling marijuana to a government agent."  Here too defendant sets forth no specific facts or arguments that defense counsel should have but failed to raise.  Defendant contends generally that counsel:  (1) failed to investigate and present evidence regarding

defendant's "well documented" mental disabilities, (2) failed to understand and argue applicable law, and (3) failed to preserve the issue for appeal.

Attorney Hinckley filed a motion to dismiss the indictment based on outrageous government conduct, arguing that the government concocted and executed a scheme to lure defendant into selling marijuana to an undercover government agent.  In addition to arguing the relevant law, the motion raised the issue of defendant's mental frailty, stating that:

> [B]y the time the government chose to conduct its sting Mr. Lepp's mental illness was no secret.  The fact that Mr Lepp was a fully disabled Vietnam veteran suffering from PTSD has been disclosed in many contexts.  This illness, which manifests itself by causing difficulty concentrating, paranoia, and a heightened sustained level of fear, clearly made Mr. Lepp particularly vulnerable to the chosen ruse of offering him secret unprovided government photos which may be helpful in his pending federal criminal prosecution.  See e.g., National Center for PTSD @ ncptsd.va.gov.

(Dkt. No. 198 at 6).  Judge Patel's order denying the motion to dismiss specifically addressed defendant's claim that the government targeted his mental and/or physical weaknesses (Dkt. No. 207 at 25).  Thus, evidence regarding defendant's alleged disabilities was adequately presented to the court, which fully considered — and rejected — defendant's argument.  Furthermore, the motion to dismiss cited and discussed relevant law and decisions from our court of appeals. Defendant does not point to any relevant law or decisions that counsel should have, but did not bring to the court's attention, much less establish that defendant was prejudiced by any such alleged failure.

On direct appeal, our court of appeals upheld Judge Patel's order, stating:

> The district court did not err in denying Lepp's motion to dismiss the indictment for outrageous government conduct. The government's conduct during the 2005 sting operation did not rise to the "extremely high" level of offensiveness required to constitute a due process violation.

*Lepp*, 446 Fed. Appx. at 46.  Accordingly, defendant's contention that defense counsel failed to preserve the issue for appeal is incorrect.

United States District Court

For the Northern District of California

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING PHYSICAL DISABILITY EVIDENCE.

Defendant contends that trial counsel was ineffective because he failed to present evidence of defendant's physical disabilities that "prevented him from actively participating in the cultivation of marijuana." Defendant claims that counsel should have obtained defendant's medical records and a medical expert to establish that defendant was unable to physically cultivate the marijuana at issue.

Before the jury, defendant testified several times that he was disabled or handicapped (*see* Dkt. No. 246 at 356–57, 366–67). To the extent that evidence regarding defendant's physical limitations had any relevance, it was adequately presented to the jury. Defendant also repeatedly denied having any role in the cultivation of the marijuana. He testified that he did not plant, tend, or harvest the plants and had no involvement other than allowing others to use his land (*id*. at 351, 356). He claimed, however, that he felt "responsible for all the plants" and that he was "very proud" of the marijuana. Smiley Harris testified that defendant merely allowed Mr. Harris' parishioners to plant marijuana on defendant's land, but that defendant did not himself direct or participate in the planting, growing, or harvesting of those plants (*id*. at 319–20).

Defendant cannot establish he was prejudiced by defense counsel's failure to present additional evidence regarding defendant's disabilities. Based on the evidence presented at trial regarding defendant's involvement in marijuana cultivation, or lack thereof, any additional evidence regarding defendant's physical limitations would merely be cumulative. More to the point, defendant's alleged inability to physically participate in the cultivation of the marijuana would not present a defense to the offenses charged. As to the offense of distribution and possession with intent to distribute marijuana, and as Judge Patel instructed the jury prior to deliberations, the elements of the offense are that defendant knowingly possessed marijuana and that defendant possessed it with the intent to distribute it to another person (Dkt. No. 251 at 30). As to the offense of conspiracy with intent to distribute marijuana, and as the jury was instructed, the elements are that there was an agreement between two or more persons to commit the offense of possession with intent to distribute marijuana and that defendant became a member of the conspiracy knowing of its purpose and intending to help accomplish that purpose. *Id*. at 27.

16

United States District Court

For the Northern District of California

Defendant's physical participation in the cultivation of the marijuana was not required to prove the offense, and such evidence, even if credible, would not have provided a defense to either offense charged at trial.  Thus, defendant cannot demonstrate a "reasonable probability" that the outcome would have been different but for counsel's allegedly ineffective assistance.

> **5.     INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING EVIDENCE THAT OTHER INDIVIDUALS OWNED THE PLANTS AT ISSUE.**

Defendant contends that counsel was ineffective for failing to present evidence that individual parishioners, not defendant, were responsible for their own plants.  Defendant admits that counsel did introduce evidence that there were 2500 individuals who were members of defendant's church between 1999 and 2008.  Defendant argues that counsel failed to present evidence to establish that "the plants were each property of specific parishioners" and that defendant's disabilities precluded him from cultivating the marijuana.  Defendant contends that counsel further failed to interview and call as witnesses at trial two unnamed "alleged eyewitnesses."

Defendant's assertion that defense counsel did not investigate or present evidence regarding the members of defendant's church is contradicted by the record.  As discussed above, Attorney Hinckley filed a motion for reconsideration of the order denying the motion in limine to present a RFRA defense.  The motion attached declarations from defendant and Erica Womachka in support of defendant's claim that there were 2500 individual church members. The motion advanced the same argument that defendant now claims Attorney Hinckley failed to investigate, namely that the plants were grown by and were the property of each individual parishioner (Dkt. No. 236).

Furthermore, Attorney Hinckley sought to advance this same argument at trial.  As stated by Attorney Hinckley in his opening statement to the jury, defendant did not own the marijuana but instead merely allowed his parishioners to grown marijuana on his land (Dkt. No. 245 at 214).  Attorney Hinckley called Smiley Harris as a witness, who testified that he had an agreement with defendant to allow Mr. Harris' church to grow 250 marijuana plants on defendant's land.  Mr. Harris testified that defendant only provided the land and did not direct or participate in the planting, growing, or harvesting of those plants (Dkt. No. 246 at 319–20).

1   Defendant himself testified that he allowed medicinal marijuana patients and members of his

2   church to grow marijuana on his land and that he had no role in the cultivation.

3       Defendant does not provide the identity of the two witnesses Attorney Hinckley allegedly

4   failed to interview or what relevant, admissible information they would have offered had they

5   testified at trial.  Based on defendant's motion, however, it appears that defendant contends the

6   witnesses would have testified that individual parishioners were responsible for the plants on

7   their plots of land and that defendant did not participate in the marijuana cultivation.  This

8   evidence, to the extent it had any relevance, was in fact presented in Mr. Harris' and defendant's

9   testimony.  The additional evidence defendant now alludes to would be merely cumulative of

10  other evidence presented at trial.  Accordingly, defendant cannot demonstrate a reasonable

11  probability that the outcome would have been different but for counsel's allegedly deficient

12  performance.

13      **6.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING**
        **FAILURE TO DEPOSE DEFENDANT'S WIFE.**
14

15      Defendant claims that counsel was ineffective because he failed to ensure that the

16  government depose his wife, Linda Senti, prior to her death.  According to defendant, at some

17  point Judge Patel ordered the government to do so.  Neither party, however, took the deposition,

18  so there was no testimony from Ms. Senti presented at trial.  Defendant contends that, even if the

19  government had not deposed Ms. Senti, Attorney Hinckley should have done so.  Testimony

20  from Ms. Senti would have established that: (1) Ms. Senti was the "organizer/supervisor with

21  respect to the cultivation of marijuana," (2) defendant's disabilities prevented him from

22  cultivating large amounts of marijuana plants, (3) parishioners of defendant's church each owned

23  specific plants, and (4) defendant was not responsible for oversight of the church business,

        including record-keeping.
24
        *First*, as the Seventh Circuit aptly observed, "[j]udges are not like pigs, hunting for
25
    truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  So too
26
    here.  Defendant has not identified any order, written or oral, for this Court to evaluate
27
    defendant's claim that Judge Patel "clearly directed the Government to take a video deposition of
28
    defendant's wife, Linda Senti, before she passed away" (Reply 34).  The government asserts

United States District Court

For the Northern District of California

18

that, after a diligent review of the record, it was unable to find any such order.  This Court does not have the resources to sift through each transcript, minute entry, and order in an effort to locate the alleged order.

*Second*, even if there was such an order requiring the government to take Ms. Senti's deposition, defendant cannot demonstrate prejudice as a result of counsel's failure to ensure that her testimony was preserved for trial.  As to any testimony regarding defendant's disabilities and the ownership of the plants by individual parishioners, those issues have been addressed above.  Ms. Senti's potential testimony regarding her role as the organizer or supervisor of the marijuana cultivation would at most have corroborated defendant's testimony at trial that "my wife, Linda, was in charge of the field . . . I stayed in the offices as was indicated by Mr. Smiley [Harris]" (Dkt. No. 246 at 393).  Defendant also testified that "if there was a boss of anything — anyone that knows this ministry knows — until the day she died, it was my wife" (*id*. at 355).  The fact that Ms. Senti was also involved in the marijuana cultivation would not have provided a defense to the two offenses charged at trial.  Defendant's own statements established that he was a leader of his church, which was named after him.  He testified that as leader and founder of the church, he felt "responsible for all the plants" and was proud of the marijuana cultivation (*id*. at 376–77).  Even if Ms. Senti was also involved in record-keeping and business arrangements of the marijuana cultivation, such evidence would not have provided a defense to liability nor have established that defendant was thereby eligible for safety-valve relief, as discussed below.  Accordingly, defendant cannot establish that he was prejudiced by counsel's allegedly deficient performance in failing to ensure that Ms. Senti's deposition was taken and presented at trial.

### 7. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING FAILURE TO OBJECT TO ADMISSION OF EVIDENCE.

Defendant contends that counsel was ineffective in "failing to investigate and make meaningful objections," which allowed prejudicial testimony to be presented at trial.  Specifically, defendant contends that defendant's counsel "opened the door" to evidence regarding the 2005 sale of marijuana to an undercover agent that had previously been suppressed on *Massiah* grounds.  Defendant claims that Attorney Hinckley was ineffective because he:  (1) opened the door to such evidence through his questioning of defendant and (2) did not "oppose

United States District Court

For the Northern District of California

1 cross-examination and presentation of evidence on this issue." As to the latter claim, defendant

2 argues that Attorney Hinckley neglected to investigate and argue facts "demonstrating

3 [defendant] had not 'opened the door' on his direct testimony."

4      On direct examination, Attorney Hinckley asked questions eliciting testimony regarding

5 defendant's acquisition of the property, his church and religious beliefs, his religious and

6 medical use of marijuana, the cultivation of marijuana on the property, defendant's regular

7 notifications to local authorities and law enforcement regarding growing of marijuana for

8 medicinal and sacramental purposes, the 2004 entry by Officer Garzoli and other local law

9 enforcement officers onto his property and defendant's statements to the officers, defendant's

10 disabilities and lack of involvement in the cultivation of the plants, and defendant's feeling of

11 responsibility for the plants as leader and founder of the church. Defendant testified that he did

12 not participate in the cultivation at all and did not direct or assist in the operation. Defendant

13 testified that he was proud that he could offer this service to people, providing "safe, affordable

14 access to our medicine in a centralized location, with an open offer to the police to come and

15 inspect it at any time" (Dkt. No. 246 at 357–58).

16      Following this direct examination, the government sought to introduce evidence

17 regarding the 2005 sale of marijuana to an undercover agent. Out of the presence of the jury,

18 counsel for the government argued that defendant's testimony had opened the door to the

19 admission of this evidence. Specifically, the government argued that the overall tenor of

20 defendant's testimony, rather than any specific question, was inconsistent with the sale.

21 Attorney Hinckley disputed this, arguing that the 2005 sale was not related to defendant's

22 testimony regarding allowing others to grow marijuana on his property in 2004. Defendant had

23 not testified, for example, that he had never made any sales, a statement which would be

24 inconsistent with the 2005 sale to an undercover agent.

25      Defendant now argues this same point in his Section 2255 motion. He claims that the

26 evidence regarding the sale was unrelated to defendant's testimony, which related to the plants

27 seized from defendant's property in 2004 and the ownership and cultivation of those plants.

28 Attorney Hinckley did, in fact, raise this argument, which Judge Patel rejected.

Defendant also contends that, although he testified as to the plants on the "rural property" (the fields on the property), he never claimed that the plants, dried marijuana, and marijuana-related paraphernalia seized from his residential property were not his.  Defendant argues that this information should have been provided to the trial court.  Even if it were true that defendant never denied ownership of marijuana from his residential property, this distinction would not have been relevant to Judge Patel's ruling allowing the evidence to be presented.  Judge Patel overruled defense counsel's objection, stating that the 2005 sale was "inconsistent with the . . . overall tenor of his testimony, and what [defendant] says he does, and who he is . . . ." (*id.* at 372).  Defense counsel's decision to argue that defendant's testimony on direct examination was not inconsistent — without raising this point regarding defendant's control and ownership over other marijuana and paraphernalia — was a reasonable tactical decision and certainly one that fell within the wide range of acceptable professional representation.

In his reply brief, defendant appears to abandon his contention that defense counsel's objections were inadequate, and instead claims that counsel improperly elicited testimony from defendant that allowed the government to successfully argue that the testimony opened the door to evidence of the 2005 sale.  Defendant does not identify any particular question or line of questions that he contends defense counsel should not have asked.  As discussed above, Attorney Hinckley elicited testimony that generally supported defendant's theory of the case regarding his allegedly compassionate and religious mission and his lack of ownership or direct involvement in the marijuana cultivation.  Elsewhere in his Section 2255 motion, defendant lambasts Attorney Hinckley for failing to present even more evidence in this vein, such as further evidence regarding defendant's disabilities, the 2500 individuals growing marijuana on his property and their ownership of the plants, and the involvement of defendant's wife in the cultivation of the marijuana.  Defendant's vague and conclusory allegations that defense counsel elicited improper testimony are insufficient to warrant habeas relief.  *See Borg*, 24 F.3d at 26.

**8.**     **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM REGARDING APPLICABILITY OF SAFETY-VALVE PROVISION.**

Defendant contends that defense counsel was ineffective in failing to present evidence that defendant claims would establish his eligibility for a reduced sentence pursuant to the

United States District Court

For the Northern District of California

safety-valve provision of 18 U.S.C. Section 3553(f).  Under this provision, a sentencing judge can depart from the mandatory minimum sentence if he or she determines that the offender "played a minor role in the offense and . . . 'made a good-faith effort to cooperate with the government.'"  *United States v. Sherpa*, 110 F.3d 656, 660 (9th Cir. 1996) (quoting *United States v. Ajugwo*, 82 F.3d 925, 926 (9th Cir. 1996)).  Defendant contends that defense counsel failed to establish each of the requisite elements for eligibility.  Specifically, defendant claims that, following the jury's verdict but prior to sentencing, defendant met with counsel for the government and a DEA agent.  Attorney Hinckley was present at this meeting.  Defendant was told that if he "recanted his testimony" and claimed he was the leader or organizer, the government would support applying the safety-valve provision.  Believing he had testified truthfully at trial, however, defendant refused to modify his testimony and refused to admit that he was the leader or organizer of others in the charged offenses (Mot. 18).

The parties both discussed the applicability of the safety-valve provision in their sentencing memoranda, filed prior to the sentencing hearing.  The basic facts of the meeting are not in dispute, and are generally in accord with defendant's characterization.  The arguments presented by the government in its sentencing memorandum were that:  (1) defendant had not been truthful, in that he stood by his trial testimony which the jury's verdict had necessarily determined was false, and (2) defendant was an organizer or leader in the conduct charged.  Defense counsel's sentencing memorandum and reply brief contended that the defense's theory, as argued to the jury, was that the government "had not met its burden of proving that [defendant]'s conduct was sufficient to meet the definition of conspiring and possessing the marijuana in the field since he did not personally grow it and did not personally own it" (Dkt. No. 276 at 3).  While the jury found otherwise, the verdict did not require or imply that the jury had determined that defendant had lied.  Defense counsel further argued that defendant's conduct did not establish that he was a leader or organizer, where "there [was] insufficient evidence that [defendant] exercised control and authority" over others who actually planted and cultivated the marijuana (*id*. at 4).

At the sentencing hearing, the issue of safety-valve relief based on defendant's truthfulness and level of involvement was argued before Judge Patel (Dkt. No. 297 at 7–16). The meeting regarding "recanting" defendant's trial testimony was again raised by both parties. The sentencing judge was well-apprised of the issues, both factual and legal, prior to ruling that the safety-valve provision was inapplicable.  Judge Patel's denial of safety-valve relief was based in part on the fact that defendant had not been fully candid with the court over the long course of the case, as well as on defendant's own statements that, as leader of the church, he felt responsible for the marijuana plants.  As discussed above, our court of appeals affirmed the sentence, holding that Judge Patel did not err in finding that defendant "failed to show by a preponderance of the evidence that he was entitled to safety-valve relief under 18 U.S.C. 3553(f)."  *Lepp*, 446 Fed. App'x at 47.

Defendant cannot establish that Attorney Hinckley's representation "fell below an objective standard of reasonableness" under the performance prong of *Strickland*.  Defense counsel argued in two briefs and at the sentencing hearing that the safety-valve provision should apply, and refuted the government's arguments regarding whether defendant's refusal to "recant" his testimony at the meeting rendered defendant ineligible.  That Judge Patel did not agree with defendant does not establish that defense counsel's performance was unreasonable.

In his reply brief, defendant contends for the first time that counsel was also deficient in failing to inform defendant that if he admitted to being a leader or organizer, he would have been precluded from obtaining safety-valve relief.  As discussed above, however, defendant stated that at the meeting, he refused to admit that he was a leader or organizer.  Therefore, defendant cannot claim to have been prejudiced by counsel's alleged failure to tell him that so admitting would preclude safety-valve relief.

### 9.   CUMULATIVE ERRORS OF COUNSEL.

"[A] court may find unfairness — and thus prejudice — from the totality of counsel's errors and omissions."  *United States v. Tucker*, 716 F.2d 576, 595 (9th Cir. 1983).  In evaluating defendant's claim, the question is whether the "multiple deficiencies have the cumulative effect of denying a fair trial to the petitioner . . . ."  *Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir.

United States District Court

For the Northern District of California

1979).  Defendant contends that the eight alleged errors discussed above rendered his defense counsel deficient and prejudicial.  Having considered each of these claims in turn, and finding each claim insufficient, this order concludes that defendant has also failed to establish that he was cumulatively prejudiced by counsel's alleged acts and omissions during trial and pre-trial proceedings.  Defendant is unable to proffer any evidence that the cumulative effect of counsel's alleged errors was prejudicial.  Such failure to prove prejudice is dispositive on a claim of ineffective assistance of counsel.

### 10.    DOUBLE JEOPARDY CLAIM.

Defendant contends that his convictions violate the double jeopardy clause of the Fifth Amendment.  As discussed above, defendant was tried and convicted on (1) one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. 846 and (2) one count of manufacture and possession with intent to distribute marijuana in violation of 21 U.S.C. 841(a)(1).  The jury returned a verdict of guilty as to both counts, further finding that the offense in each count involved 1,000 or more marijuana plants.

The government contends that defendant's claim is procedurally defaulted, as defendant failed to raise the claim before the trial court or on direct appeal.  *See United States v. Withers*, 638 F.3d 1055, 1064 (9th Cir. 2011).  Absent a showing of cause and prejudice or actual innocence, defendant is procedurally barred from raising a defaulted claim in a Section 2255 motion.  *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).

Even if defendant were able to overcome the procedural bar, however, the claim is without merit.  It has long been established that a "substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes."  *United States v. Saccoccia*, 18 F.3d 795, 798 (9th Cir. 1994) (citing *United States v. Felix*, 503 U.S. 378, 389 (1992)); *see also, United States v. Wylie*, 625 F.2d 1371, 1381–82 (9th Cir. 1980).  Two counts within an indictment are not duplicative for purposes of the Fifth Amendment if "each separately violated statutory provision requires proof of an additional fact which the other does not."  *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005).  Conspiracy requires proof of an agreement between two or more persons (here, to possess with intent to distribute and distribute marijuana),

as well as defendant's joining in the agreement knowing of its purpose and intending to help accomplish that purpose.  In comparison, the offense of distribution and possession with intent to distribute marijuana are that defendant knowingly possessed marijuana and that defendant possessed it with the intent to distribute it to another person.  Therefore, the conspiracy count required proof of additional facts not required by the possession and distribution count, and vice versa.

Defendant further appears to argue that it is unconstitutional to charge and convict him for offenses involving 1,000 or more marijuana plants, as the phrase "or more" is ambiguous. Defendant contends that at sentencing, approximately 25,000 plants were attributed to him. Therefore, the prohibition against double jeopardy and the rule of lenity require that the ambiguity be resolved in favor of defendant.  Defendant's argument is not supported by any authority, nor does it make any logical sense.  The fact that the quantity charged was stated as "1,000 plants or more" does not render the charge constitutionally ambiguous.  Moreover, defendant has not demonstrated prejudice.  Defendant was sentenced to a ten-year term of imprisonment — the mandatory minimum for an offense involving at least 1,000 marijuana plants.  *See* 18 U.S.C. 841(b)(1)(A)(vii).  Defendant's contention that he was in fact sentenced based on approximately 25,000 plants is irrelevant, as the sentence imposed was based on the ten-year mandatory minimum provided for an offense involving at least 1,000 marijuana plants. And, as discussed above, the evidence at trial was more than sufficient to support the jury's special finding that the counts involved 1,000 or more marijuana plants, as the parties stipulated that the number of marijuana plants was 24,784.

**11.**     **MOTION SEEKING LEAVE TO AMEND TO INCLUDE ADDITIONAL CLAIM FOR VIOLATION OF EQUAL PROTECTION.**

On January 12, over two months after filing his original Section 2255 motion, defendant filed a motion seeking leave to amend his Section 2255 motion to add an additional claim. Defendant contends that he "has discovered important and relevant information and documentation" justifying the addition of this new claim.  Defendant appears to argue that his conviction is unconstitutional because marijuana should be legal, or because it is a violation of equal protection for the federal government to prosecute him for marijuana possession, where the

United States District Court

For the Northern District of California

states of California, Colorado, and Washington have decriminalized marijuana for medicinal

and/or recreational purposes (see Dkt. No. 355).  Even assuming such an amendment would be

proper and timely under the applicable rules, amendment would be futile.  Accordingly, the

motion for leave to amend is **DENIED**.

Rule 12 of the Rules Governing Section 2255 Motions provides that the Federal Rules of

Civil Procedure may be applied to Section 2255 motions when appropriate.  Our court of appeals

has stated that:

> In assessing the propriety of a motion for leave to amend, we
> consider five factors:  (1) bad faith; (2) undue delay; (3)
> prejudice to the opposing party; (4) futility of amendment; and
> (5) whether the plaintiff has previously amended his complaint.
> Futility alone can justify the denial of a motion for leave to
> amend.

*Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (internal citations omitted).  Here, granting

leave to amend would be futile.  Defendant's proposed new claim rests on his contention that

marijuana has been misclassified under the Controlled Substance Act and that the federal

prohibition against marijuana, which is allowed by state law, is discriminatory.  Defendant's

equal protection challenge to the classification of marijuana as a Schedule I drug under the Act is

contrary to the Supreme Court's holding in *Gonzalez v. Raich*, 545 U.S. 1, 9 (2005).  In *Raich*,

the Supreme Court upheld the constitutionality of the CSA and Congress' classification of

marijuana as a Schedule I drug.  Defendant has not met his burden of establishing that no

rational basis exists to justify the classification of marijuana under the CSA.  Nor has defendant

set forth any evidence in support of his selective prosecution argument that would establish that

individuals in California, Washington, and Colorado are not, in fact, being prosecuted by the

federal government for violations of the CSA's prohibition on marijuana.  *See, e.g., Sacramento

Nonprofit Collective v. Holder*, 855 F.Supp.2d 1100, 1110 (E.D. Cal. 2012) (finding that the

federal government has enforced the CSA against medical marijuana patients and dispensaries in

California and Colorado).  Accordingly, for the reasons stated above, defendant's motion for

leave to amend is **DENIED**.

**CONCLUSION**

For the foregoing reasons, defendant's sentence was not "imposed in violation of the Constitution or laws of the United States, or . . . without jurisdiction . . . , or . . . in excess of the maximum authorized by law," and is not "otherwise subject to collateral attack." 28 U.S.C. 2255(a).  Therefore, defendant's motion is **DENIED**.


**IT IS SO ORDERED.**

Dated:  April 9, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE